Stephanie E. FORSBERG, individually
and on behalf of all similarly
situated persons, Plaintiff,

v.

PACIFIC NORTHWEST BELL TELE-
PHONE CO., a Washington
corporation, Defendant.

Civ. No. 84–1401–FR.

United States District Court,
D. Oregon.

March 29, 1985.

Dan O'Leary, Robert K. Udziela, Pozzi, Wilson, Atchison, O'Leary & Conboy, Henry Kantor, Delo, Kantor & Stamm, Portland, Or., for plaintiff.

Lester V. Smith, Jr., Kenneth E. Jernstedt, David H. Wilson, Jr., Corbett Gordon, Bullard, Korshoj, Smith & Jernstedt, P.C., Portland, Or., for defendant.

## OPINION AND ORDER

FRYE, District Judge.

This is an action on behalf of an alleged class of approximately 300 employees and former employees of the defendant, Pacific Northwest Bell Telephone Co. (PNB), in the position of "Maintenance Administrator" (MA). The complaint alleges sex discrimination in wage rates and retaliatory acts after administrative discrimination complaints were filed. Violations of Title VII, the Federal Equal Pay Act, the Oregon Fair Employment Practices Act, the Oregon Equal Pay Act, and an Oregon wage claim statute are asserted.

The allegations of pay discrimination are as follows:

Plaintiff is employed by defendant as a maintenance administrator. The primary work done by maintenance administrators was previously done by an employee group that was predominantly male, who bore the title "test desk technician," until about March 7, 1983, when the work was transferred to maintenance administrators.

. . . . .

Plaintiff and other maintenance administrators have requested that defendant pay them compensation equal to that previously paid to the predominantly male group of test desk technicians, and defendant has refused, thus committing an unlawful employment practice ...

Plaintiff's Complaint, Paragraphs 15 and 17.

The matters before the court are defendant's motion to join additional parties and motion to dismiss.

## MOTION TO JOIN PARTIES

PNB moves the court pursuant to Fed.R. Civ.P. 19, 20, and 21 for an order requiring joinder of the Communication Workers of America and Communication Workers of America, Locals 9201, 9204, 9206, and 9208 (CWA) as parties defendant.

PNB contends that the wage rates of MAs alleged to be discriminatory were negotiated and agreed to by the CWA and fixed by the wage schedule in the collective bargaining agreements between the CWA and PNB. PNB argues that joinder of the CWA is mandatory under Fed.R.Civ.P. 19 because (1) if the alleged pay discrimination is proved, these unions may be liable to plaintiff and the class she seeks to represent for that discrimination; and (2) the relief plaintiff seeks conflicts with the collective bargaining agreement to which the CWA is a party, and if relief is granted it will necessarily affect the terms of the CWA contract.

Plaintiff opposes the proposed joinder on the grounds that she has no complaint against the CWA for negotiating wage rates and classifications for the MAs and the Test Desk Technicians (TDT). Plaintiff says she has no quarrel with the fact that these two classifications exist, but complains of the transfer of work from the higher paid, predominantly male group, to the lower paid predominantly female group, *after the fact of the collective bar-*

*gaining.* Plaintiff argues that PNB fails to allege that the CWA had anything to do with the transfer of the job task from TDTs to MAs, or had a role in populating the job classifications with predominantly female personnel. Plaintiff submits no affidavit to support her position that the transfer of job tasks occurred after the collective bargaining.

PNB submits afidavits of its staff consultant in the Employee Relations Department stating that the MA title was created in 1980 for a new job operating newly developed and newly installed computerized equipment. The CWA negotiated a wage rate for MAs in the 1980 contract and in the 1983 contract. Before the agreement on the 1980 contract, PNB staff states, CWA was informed in detail of the nature and content of the work of the new MA classification and was informed that the new classification would be filled by the promotion of G–5 clerks—a position known to be predominantly female. Knowing these facts, the affiant declares, the CWA negotiated and agreed to a clerical wage schedule for MAs at the G–8 level (a pay increase for G–5 clerks promoted to the MA positions). The staff consultant's affidavit is supported by the affidavits of two additional PNB employees attesting to personal knowledge of the facts as presented.

During the 1980 bargaining, the affiant further states, the CWA and PNB formed a Technology Change Committee (TCC) with three members from the company and three members from the CWA which met 21 times prior to 1984 to oversee problems and recommend solutions in the area of technological change. This committee addressed issues of technological change that resulted in this lawsuit.

Further, before agreement on the 1983 contract all MA positions had been filled by promotion of the G–5 clerks, and the computer system which MAs used was in full operation. Knowing these facts—that is, the nature of the MA position work and the sexual composition of the workforce represented—CWA agreed to continue the wage schedule which is now attacked in this ac-

tion. PNB contends that the CWA must now bear its share of liability, having agreed to the provisions of the contracts that are now attacked as discriminatory.

■ In the action before the court, a labor union can be joined with the employer for the purpose of sharing liability for discriminatory acts. *See e.g., Stevenson v. International Paper Co.,* 14 F.E.P. 1279, 1294 (W.D.La.1977), and *Myers v. Gilman Paper Corp.,* 14 F.E.P. 218, 225–227 (5th Cir.1977), or be joined with the employer to avoid leaving the employer subject to a substantial risk that the judgment will be inconsistent with the employer's obligations under the collective bargaining agreement. *See e.g. Hodgson v. School Bd.,* 56 F.R.D. 393, 394 (W.D.Penn.1972), and *NOW, St. Paul Chapter v. 3M Co.,* 73 F.R.D. 467 (D.Minn.1977).

■ There is no disagreement that the wage rates alleged by plaintiff to be discriminatory were negotiated and agreed to by the CWA in the collective bargaining agreements with PNB. Plaintiff's allegation that the job duty transfers from TDTs to MAs was after the fact of the collective bargaining agreement and entirely without the knowledge and acquiescence of the CWA is not supported by any fact.

Under these circumstances, the court finds that it is proper to join the CWA and the named locals as defendants under Fed. R.Civ.P. 19 in order to establish any potential liability of the unions as well as to avoid the possibility of inconsistent obligations of PNB.

### DEFENDANT'S MOTION AGAINST THE COMPLAINT

Plaintiff asserts five claims for relief under the following statutes: (1) Title VII of the Civil Rights Act of 1964, (2) the Federal Equal Pay Act, (3) Oregon's Fair Employment Practices Act, (4) Oregon's Equal Pay Act, and (5) an Oregon wage claim statute. PNB's motion seeks an order dismissing each of these claims, or, in the alternative, striking portions of them. The court will

discuss each of the asserted grounds for relief in turn.

### 1. Title VII

PNB moves to dismiss plaintiff's claim under Title VII of the Civil Rights Act of 1964 on the grounds that plaintiff has failed to allege that the pay differences between the TDT positions and the MA positions are based on sex discrimination, or that the MA positions are equal or substantially equal to the TDT positions. Defendant asserts that the sketchy and incomplete allegations fail to state a claim under Title VII and provide no basis for determining whether plaintiff seeks to recover under a theory of "comparable worth," a disparate impact model, or intentional discrimination based upon sex.

Plaintiff contends that she does not need to plead more than her assertions that she is female; that the work of the TDTs had previously been done by a classification of employees predominantly male; that the primary work done by TDTs was transferred to the MA positions which were predominantly held by women; and that the wages of the MA positions were approximately $100 per week less than the wages of the TDT positions. Plaintiff contends that these allegations are sufficient to allege that the positions are substantially equal and that the resultant pay differences are based upon sex and nothing else.

■ Plaintiff must allege either substantial equality of the TDT and the MA positions or intentional discrimination on the basis of sex in order to state a claim under Title VII. Plaintiff claims to fulfill the requirement of alleging intentional discrimination based upon an allegation of wilfull action in paragraph 21 of her complaint, which states:

> Defendant's violation of Title VII was wilful, justifying an award of punitive damages in the amount of no less than $100,000 to plaintiff and each class member.

This allegation is not sufficient. Even if plaintiff's Title VII claim is not dismissed for failure to state a claim, the allegation in Paragraph 21 will be dismissed. Punitive damages are not recoverable in a Title VII case. *Shah v. Mt. Zion Hospital & Medical Ctr.*, 642 F.2d 268, 272 (9th Cir.1981). Plaintiff has not alleged intentional discrimination sufficiently to state a disparate treatment cause of action under Title VII.

■ The allegation of "substantial equality" of the MA and TDT positions presents a more difficult issue. If plaintiff bases her Title VII action "only on a comparison of work performed, [she] would have to show substantial equality." *Spaulding v. Univ. of Washington*, 740 F.2d 686, 700 (9th Cir.1984). A court "will not ... infer intent [to discriminate] merely from the existence of wage differences in jobs that are only similar." *Id.* Therefore, the court must determine whether plaintiff's allegations sufficiently state that the positions at issue are substantially equal. Plaintiff alleges that:

> The primary work done by maintenance administrators was previously done by an employee group that was predominantly male, who bore the title "test desk technicians," until March 7, 1983, when the work was transferred to maintenance administrators.

While the burden of establishing a *prima facie* case under Title VII is not onerous, the sole allegation that the "primary work" done by one position was transferred to another position is not sufficient. The nature of the TDT position is not disclosed in this allegation. Any additional responsibilities are left open for speculation. Any adjustments in the work transferred are left open for speculation. If plaintiff's claim is that these positions are equal or substantially equal, she must plead that claim and the facts upon which it rests.

Defendant's motion to dismiss plaintiff's first claim for relief (Title VII) is granted. Plaintiff is granted leave to amend.

PNB moves for partial summary judgment dismissing plaintiff's claims of retaliation under plaintiff's Title VII claim. Plaintiff alleges:

On or about November 1, 1983, plaintiff and many other class members filed timely employment discrimination claims against defendant based upon the facts alleged in this complaint with the Equal Employment Opportunity Commission (EEOC) and the Civil Rights Division of the Bureau of Labor and Industries (BLI) of the State of Oregon. Since November 1, 1983, defendant has engaged in retaliatory conduct against the class in reaction to the filing of the employment claims by attempting to coerce class members and their union to withdraw labor grievances and by classifying class members as "surplus" employees, thus subject to lay-off.

PNB claims that these retaliation claims should be dismissed because plaintiff has failed to exhaust her administrative remedies and because plaintiff has failed to allege that *she* has suffered retaliation.

### Exhaustion of Administrative Remedies

PNB contends that these retaliation claims should be dismissed because plaintiff does not allege that these or any other retaliation charges were submitted to the Civil Rights Division of the Oregon Bureau of Labor and Industries or the Equal Employment Opportunity Commission (EEOC). Plaintiff responds stating that new claims need not be filed because the allegations are related to the original charge and occurred during the pendency of the charge before the EEOC.

■ When an employee seeks judicial relief for incidents not listed in his original charge, a federal court may assume jurisdiction over the new claims if they are "like or reasonably related to the allegations of the EEOC charge." *Oubichon v. Northern American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973). If closely related incidents occur after a charge has been filed, additional investigative efforts would be redundant. *Brown v. Puget Sound Elec. App. & Train. Trust*, 732 F.2d 726, 730 (9th Cir.1984). " 'To require a second "filing" by the aggrieved party ... would serve no purpose other than the creation of an additional procedural technicality.' "

*Ramirez v. National Distillers & Chemical Corp.*, 586 F.2d 1315, 1320 (9th Cir. 1978), *citing Love v. Pullman Co.*, 404 U.S. 522, 526, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972).

■ The court finds that it would not be redundant to require the plaintiff to present her claims of retaliation through the proper administrative channels before presenting them to this court. Allegations of retaliation, although stemming from the filing of the original complaint, involve different actions of the employer. The failure to present these issues administratively subverts the procedures and policies of Title VII. The court will dismiss the allegations of retaliation with leave to plaintiff to amend after the administrative processes have been properly followed.

### Plaintiff's Allegations of Retaliation

PNB moves to dismiss plaintiff's retaliation allegations on the grounds that there is no specific allegation of retaliation against the plaintiff. Plaintiff responds by stating that the complaint alleges that PNB attempted to coerce the union, of which she is a member, to withdraw its grievance, stating an allegation of retaliation specific to her interests.

The United States Supreme Court has repeatedly held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982), quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974). This requirement properly protects the class members from representation by one who does not share their injury and cannot properly present their case.

Plaintiff's complaint asserts three types of retaliatory conduct by the defendant: (1)

attempts to coerce class members to withdraw labor grievances, (2) attempts to coerce the union to withdraw labor grievances, and (3) classifying class members as "surplus" employees, thus subject to layoff. Plaintiff does not state that she was one of the class members allegedly coerced to withdraw labor grievances or reclassified as "surplus."

■ The court finds that plaintiff as a member of the union may represent the class members in the allegation that PNB attempted to coerce the union to withdraw its labor grievance. The court finds that plaintiff may not represent class members alleged to be personally coerced to withdraw grievances or classified "surplus" without an allegation that she herself has suffered the same injury. Because plaintiff has failed to allege these injuries, the claims of coercion of individual class members and classification as "surplus" are dismissed.

*Front Pay*

■ PNB moves to dismiss the allegation in Paragraph 20 of the complaint which states, "Class members who are no longer employed by defendant are entitled to appropriate damages for 'front pay.'"

PNB claims that there is no basis in law for this claim and asks it be stricken. Plaintiff argues that the allegation is proper because "front pay" can be awarded for loss of future pay to a successful Title VII plaintiff who would be entitled to reinstatement, but is not required to return to a hostile or otherwise unsuitable work environment. Plaintiff maintains that any ruling on this issue would be premature in that the merits of the case have not been determined.

While plaintiff's legal point is correct, plaintiff and class members in this case have neither asked the court for any relief in the nature of reinstatement nor alleged any improper discharge, and, as a consequence, cannot be entitled to front pay. Plaintiff's claim for front pay is dismissed.

*Punitive Damages*

■ Punitive damages are not recoverable in a Title VII case. *Shah v. Mt. Zion Hospital & Medical Ctr.*, 642 F.2d 268, 272 (9th Cir.1981). Plaintiff's claim for punitive damages is dismissed.

*Jury Demand*

■ Plaintiff's demand for jury trial under the Title VII action is dismissed. *Shah v. Mt. Zion Hospital & Medical Ctr.*, 642 F.2d at 272.

### EQUAL PAY ACT

■ Because the court has ruled that plaintiff's complaint fails to properly allege that the MA and the TDT positions are equal or substantially equal, plaintiff's second claim for relief under the Equal Pay Act is dismissed with leave to amend.

In the event the complaint is amended, the court will address PNB's further motions as to the Equal Pay Act claim.

*Allegation of Establishment*

PNB moves to dismiss plaintiff's Equal Pay Act claim on the grounds that plaintiff in her complaint fails to make an allegation that any TDT is employed in the same establishment where plaintiff is employed or where any other MA is employed.

The Equal Pay Act provides:

No employer ... shall discriminate, *within any establishment* in which such employees are employed, between employees on the basis of sex by paying wages to employees *in such establishment* at a rate that is less than the rate which he pays wages to employees of the opposite sex *in such establishment* for equal work.... 29 U.S.C. § 206(d)(1), emphasis added.

EEOC regulations define "establishment" as follows:

Each physically separate place of business is ordinarily considered a separate establishment. For example, where a manufacturer operates at separate locations a plant for production of its goods, a warehouse for storage and distribution, several stores from which its products

are sold, and a central office for the enterprise, each physically separate place of business is a separate establishment. 29 C.F.R. § 800.108

PNB contends that plaintiff's failure to allege pay discrimination within any single establishment is fatal to her Equal Pay Act claim and requires dismissal. Plaintiff, citing cases from other jurisdictions, argues that it may be appropriate in certain cases to apply the Equal Pay Act to operations at different physical locations.

■■■ This court recognizes that a claim under the Equal Pay Act is generally subject to the "single establishment" limitation defined in 29 C.F.R. § 800.108 and discussed in *Bartelt v. Berlitz School of Languages of America*, 698 F.2d 1003, 1005–1007 (9th Cir.1983). Equal Pay Act claims must ordinarily be presented and proven within a single establishment. However, the definition of "establishment" contained in the EEOC regulations is not without reservation. The definition states that "each physically separate place of business is *ordinarily* considered a separate establishment." 29 C.F.R. § 800.108. While the court will not permit this definition to defeat the spirit and purpose of the Equal Pay Act, the limitation is applicable where special circumstances are not presented. Plaintiff in this action has failed to allege any special circumstances which would obviate the single establishment limitation. This issue should be addressed if plaintiff repleads the Equal Pay Act claim.

### Retaliation Allegations

■■■ 29 U.S.C. § 215(a)(3) makes it unlawful:

> To discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee;

PNB moves to dismiss plaintiff's claims of retaliation under the Equal Pay Act on the grounds that plaintiff has not engaged in any activity protected by the statute.

To the extent that plaintiff alleges retaliation against herself or against herself through pressure on her union for claims of unequal pay despite equal work instituted by plaintiff or caused to be instituted by plaintiff's union, her claims are proper. All further allegations are dismissed.

### Front Pay

■■■ Plaintiff's claim for front pay is dismissed for the reasons stated in the Title VII claim.

### Punitive Damages

■■■ PNB moves the court to dismiss plaintiff's claims for punitive damages under the Equal Pay Act on the grounds that punitive damages are not recoverable under the Act. PNB relies upon the case of *Thornberry v. Delta Airlines*, 27 F.E.P. 1203, 1205 (N.D.Cal.1976), *aff'd on other grounds*, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983). Plaintiff contends that *Thornberry* is not dispositive because plaintiff in Thornberry conceded the issue of punitive damages and the Ninth Circuit has not specifically ruled upon the issue.

While plaintiff is correct in noting that the plaintiff in *Thornberry* conceded the issue of punitive damages, the court in accepting the concession stated that "[T]he statutory remedy is the sole remedy available to employees for enforcement of rights under the Fair Labor Standards Act." 27 F.E.P. at 1205. This court, as the court in *Thornberry*, finds no authority to support plaintiff's claim for punitive damages under the Equal Pay Act.

Plaintiff's claim for punitive damages under the Equal Pay Act is dismissed.

### Jury Demand

■■■ PNB moves the court to strike plaintiff's jury demand insofar as it relates to her claim for liquidated damages, relying upon the case of *McClanahan v. Matthews*, 440 F.2d 320, 322 (6th Cir.1971). In *McClanahan*, the court found an award of

liquidated damages was in the sound discretion of the court under the Portal to Portal Act where provisions of the Fair Labor Standards Act (FLSA) were applied.

The court finds that plaintiff's claims for liquidated damages should be tried to the court for the reasons set out by the court in *Altman v. Stevens Fashion Fabrics*, 441 F.Supp. 1318, 1323 (N.D.Cal.1977).

*Class Allegations*

▮▮▮ PNB moves the court to strike plaintiff's class allegations under her Equal Pay Act claim on the grounds that no class action may be maintained under the Equal Pay Act. PNB asserts that a plaintiff suing under the FLSA may only represent those employees who have filed consents to join the action, as provided in 29 U.S.C. § 216(b), which provides:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

In *Kinney Shoe Co. v. Vorhes*, 564 F.2d 859 (9th Cir.1977), the court explained the difference between an action under § 216(b) and Fed.R.Civ.P. 23.

> At the outset, it should be emphasized that this class action is being prosecuted under § 216(b), and not under Rule 23. Under § 216(b), a member of the class who is not named in the complaint is not a party unless he affirmatively "opts in" by filing a written consent-to-join with the court. 29 U.S.C. §§ 216(b) & 256. No member of the class is either bound by the class action adjudication or barred from filing an individual claim within the limitation period unless he opts to become a party. [citation omitted] This is in contrast to a Rule 23 class action, where, in general, a member of the class once certified is a party to the action unless he affirmatively "opts out"....

564 F.2d at 862.

PNB's motion to strike the class allegations is denied. Plaintiff is entitled to plead the action on behalf of those similarly situated as provided in section 216(b).

These allegations do not convert the action under the Equal Pay Act into a Rule 23 class action case. Only those who affirmatively "opt in" by filing a consent-to-join will be entitled to share in any liability plaintiff may establish under the Equal Pay Act.

### STATE LAW CLAIMS

Plaintiff asserts three pendent state claims under (1) the Oregon Fair Employment Practices Act, ORS 659.030; (2) the Oregon Equal Pay Act, ORS 652.220; and (3) the Oregon Wage Claim Statute, ORS 652.355.

PNB urges this court to decline to assert pendent jurisdiction over plaintiff's state law claims. PNB contends that these claims raise numerous unsettled questions of state law which the court should exercise its discretion to decline to address. In addition, PNB asserts that the state Equal Pay Act claim will create confusion over the issue of class action.

Plaintiff urges the court to address the issues presented by the state law claims. Plaintiff asserts that this court should not be concerned that it will somehow interfere with the state court's interpretation of these statutes because "in all likelihood" the statutes will be interpreted to parallel the federal statutes and remedies.

▮▮▮ Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Pendent jurisdiction is not appropriate when (1) the state claims present questions of state law that are more appropriately decided by state courts, (2) the state claims predominate in terms of proof, scope of issues or comprehensiveness of remedy, or (3) litigation of the state claims is likely to create jury confusion. 383 U.S. at 726–27, 86 S.Ct. at 1139.

*Oregon Equal Pay Act, ORS 652.220, Fourth Claim for Relief*

▮▮▮ The court finds that the Oregon Equal Pay Act raises numerous issues of

first impression more appropriately settled in the state courts. The statutory language is significantly different from the Federal Equal Pay Act language in 29 U.S.C. § 206(d)(1). Because the state statute has not been interpreted to any significant degree, plaintiff's claim would force this court to rule on issues of state statutory interpretation for the first time. The court declines plaintiff's invitation to assume that the state act was intended to parallel the federal act.

In addition to statutory interpretation, if the court were to assume pendent jurisdiction, it would have to interpret the Oregon legislature's intention as to the scope of damages, i.e., punitive damages, as well as the right to a jury trial. These issues are better settled by the Oregon state courts. This court declines to exercise pendent jurisdiction over the claim.

### Oregon Wage Claim Statute, ORS 652.355, Fifth Claim for Relief

The court finds that this claim asserted by the plaintiff raises issues of statutory construction more appropriately resolved by the state courts. In order to determine whether plaintiff states a claim for relief under this statute, this court has to decide whether the legislature intended to afford a private right of action under this statute as well as whether this statute was intended to include pay discrimination complaints under the Equal Pay Act, which contains its own retaliation provision. The court declines to decide these issues before the Oregon state courts have had the opportunity to address them.

### Oregon Fair Employment Practices Act, ORS 659.030, Third Claim

The court finds that it is appropriate to assert jurisdiction over plaintiff's claims under the Oregon Fair Employment Practices Act. Several state court cases have resolved many of the issues of statutory interpretation, procedural rights and remedies available under this Act. *See, e.g. Holien v. Sears, Roebuck and Co.*, 298 Or. 76, 689 P.2d 1292 (1984) and *Vaughn v.*

*Pacific Northwest Bell Telephone*, 289 Or. 73, 611 P.2d 281 (1980). Should plaintiff decide to pursue her other state claims in the Oregon state courts, this claim can be dismissed and joined in that action.

Because the court has ruled that plaintiff has failed to allege intentional discrimination because of sex or discrimination in substantially equal positions because of sex, defendant's motion to dismiss plaintiff's claims under the Oregon Fair Employment Practices Act is granted with leave to amend.

In the event that plaintiff amends this claim, the court will address PNB's further objections. Plaintiff's jury demand and plea for punitive damages are not cognizable under this statute. *Holien v. Sears, Roebuck & Co.*, 298 Or. at 95, 689 P.2d 1292. Plaintiff's allegations of front pay recovery are dismissed for the reasons stated earlier in this opinion.

PNB moves this court to limit plaintiff's allegations of retaliation to actions occurring subsequent to November 16, 1983. Plaintiff's complaint alleges retaliatory conduct occurring "since November 1, 1983," the date on which plaintiff and other class members first filed charges of pay discrimination with the EEOC and the State of Oregon Bureau of Labor. It is not clear whether this controversy over 15 days involves any specific complaint or incident of retaliation. The court reserves any ruling on this issue until the facts are adequately before it.

IT IS HEREBY ORDERED:

1. Defendant's motion to dismiss plaintiff's first claim for relief for failure to state a claim is GRANTED with leave to amend.

2. Defendant's motion to dismiss plaintiff's second claim for relief for failure to state a claim is GRANTED with leave to amend.

3. Defendant's motion to dismiss plaintiff's third claim for relief for failure to state a claim is GRANTED with leave to amend.

4. Defendant's motion to dismiss plaintiff's fourth claim for relief for lack of pendent jurisdiction is GRANTED.

5. Defendant's motion to dismiss plaintiff's fifth claim for relief for lack of pendent jurisdiction is GRANTED.

6. Defendant's motion to join parties is GRANTED.